May it please the Court, I will transcribe the initial time between the 1-8-1 and 7-2-7 patent summary judgment issues. The District Court was wrong to construe Digest and the 1-8-1 patent claims as a structure and not contents of the structure, but even if this Court affirms the summary judgment construction, the District Court also has the right to resolve fact issues against ENTERASYS. In its two-paragraph discussion of its new summary judgment construction for Digest, which is at 8-72, the Court committed three critical errors. First, the Court ignored ENTERASYS' argument that it should determine the plain and ordinary meaning of Digest first. Second, the Court construed Digest based on its interpretation of the term containing without even considering what that term means. Is your main dispute here over whether or not it's a structure or not a structure? Yes, exactly, Your Honor. And the District Court, I recall, relied on the fact that it used the word containing. Why doesn't containing connote some sort of a structure? I mean, a container is something that contains something. It's typically a structure, is it not? That's one meaning of container, yes. That's correct, Your Honor. But the problem here is that container has a number of meanings and the District Court did not analyze that in any way and didn't say what meaning it was using. As a matter of fact, ENTERASYS was the only party that offered a construction of containing, and our construction was to have component parts include or comprise. So is your argument more of a process argument, that she didn't do this in the context of the markment, and therefore she was precluded from doing it later? She wasn't precluded from doing it later, Your Honor. So, yes, it's a process argument about how she went about construing the claims, but not because of time. We recognize that a judge can change claim construction, for example. But here in particular, after the markment order, this judge issued a very strongly worded order in December saying that this was basically her construction, for better or worse, and that the parties should rely on that for purposes of expert depositions and summary judgment, which we did. So it's not that a judge can't change claim construction, but here she did it in such a way that it prejudiced ENTERASYS. So that's part of our argument for a remand being necessary. Do you get to be here? Was the November order a final judgment? Absolutely not, Your Honor. What was left to be done? Well, there were a number of things left to be done, but most importantly, it could not possibly be a final order, because it extremely requested additional damages that were not included in that order. So it's not a 1295A appealable order. That would, for example, be, if anything, an interlocutory appeal under 1292C2. Well, you could have appealed it. It's not that you couldn't have appealed it. It's just that your argument is you had the right to not appeal it. That's correct, Your Honor. There was the potential for a 1292C2 interlocutory appeal, but that's not the avenue we chose. It was not, however, a final judgment. And this was covered, for example, in this court's POTS case, which was essentially identical facts on the important facts. I'm still trying to figure out what was left for the court to do. The prejudgment interest I understand, but that was waiting for you to give him information, right? That's not entirely correct, Your Honor. And besides, there was more than that. The parties were still resolving pretrial damages, for example, from January to May 2008, and that is part of the 284 compensation. That's something that the parties had already been talking about, and we had already given them numbers. That's in the record at 819072, that they were asking for those numbers in June, five months before this November order. At 819102, there's a June 8, 2008, pleading from Entericis, which shows that we gave them those numbers, so they had them already. And then there were also letters specifically transmitting those numbers to Extreme. So they had all that. It was an issue, just like in the POTS case, that was fully ripe to be added to the ultimate judgment. And then Extreme itself waited 55 days later. Well, the thing that troubles me a little bit as I look at this is the main issue here is the prejudgment interest, and that was waiting for Entericis to provide information to Extreme, right? So you kind of had a little control over whether this was going to be final. Your Honor, I disagree that the main issue was prejudgment interest. There were pretrial damages, which are an essential component of the full compensation under 284. And with those pretrial damages, which, as I said, were being discussed already in June, so just like the POTS case, this issue was out there. And they say that once Extreme and the brief switched from saying that the POTS case had a motion pending, which it did not, they say that the issue of damages under 284 was pending, exactly as it is here. So this is no different on the operative fact from POTS, and this Court certainly has jurisdiction. Do you have an alternative argument for jurisdiction, correct? We have a number of alternative arguments. So let's focus. You have a motion that the motion to stay was constituted a notice of appeal? That's correct. Is it your view that if we agreed with you on that, we would be compelled to dismiss the cross-appeal as untimely? Because I think there was some suggestion in your brief which seemed to me like the definition of chutzpah. Well, what we pointed out, Your Honor, was very simple, and it was just a one-sentence comment, which is the real point of that is that they chose to wait until 14 days after our notice of appeal was filed before they filed their cross-appeal notice. So they obviously, under the rule which says that 14 days after a timely notice of appeal, they at that time thought our notice of appeal was timely until they later decided apparently that it wasn't. So our point is that once they thought attorneys' fees was an issue, they could have filed 30 days after the March 16th order, but they apparently believed the same thing we believed. So that's all we're saying there. It's not timely under that cross-appeal, but they could have filed it as an appeal in their own right. Let me just move you back to the infringement issues, the claim construction. On the bridge circuitry, one of your arguments is that even accepting the claim construction, there's still an issue of fact. That's correct, Your Honor. And I don't recall that you provided a lot of record sites to, so I was just wondering if you could point me now to evidence that show that the accused products meet the definition. Well, if you look at A4743 to 4747, for example, that's Dr. Jaffee's expert report, and that collects all the evidence, which also is incorporated in our brief on summary judgment just cited there. So those are the two primary sources that the judge was looking at, and in this court under the judge's trial management order or case management order, those expert reports are incorporated into what's filed for summary judgment as well as the proposed client's fact and so on. So the citations in the briefs to confidential information, what is that based on? We always struggle with designation as confidential material. Yes, Your Honor, that was to product information that extremely designated confidential, so we're simply relying on their desire, and we ask them as the rules require, and they wanted to keep that confidential, so I guess that's a better question for them. I'll stick with the 727 patent, Your Honor, since you raised that. There, the district court was wrong to construe the bridge circuitry element in Claim 5 as depending on protocol suite in order to bridge a packet. But here also, as you point out, Judge Post, the district court, it made factual findings against the terrorists there as well, which is inappropriate on summary judgment. It did find, for example, that all of Xtreme's accused products do recognize the protocol type, and we had evidence in the record that there were, for example, look-up tables that used both protocol suite and the MAC address. So there was evidence that at least should have survived summary judgment with respect to the 727 patent. For the 181 patent, again, the third error I was going to point out is that the court construed digest in conjunction with network protocol processing information without giving a definition for that either, as with containing. And so there violated cases like ACTV and every penny counts, we cite in our brief, which require the court to take into account all the terms that are interrelated in a fashion like this when engaging in claim construction. And as a matter of fact, the court, we cite also the Applied Medical Resources case where the court explained at length that different terms must connote different meanings but not necessarily point to different structures, which is something that they argued that we were trying to merge limitations structurally. So for the 181 patent, we asked that looking at all three terms together, this court should vacate the summary judgment order and construe digest as a summation, condensation, or collection of information. I see I only have about a minute left on my original time. That's slightly different than the claim construction proposed earlier on in the process, right? Well, we had said collection of information, but what we did is we refined that slightly on summary judgment to go more precisely with the dictionary definition that we had cited and the ordinary meaning, which is collection, condensation, or summation of information. On the 727 patent with respect to the bridge circuitry limitation, I want to point out something particular about the judge's order as to how she erred there in her claim construction. In her summary judgment order at A76, the court acknowledged that although the claim does not explicitly state that the protocol suite triggers the decision whether the device acts as a bridge, she concluded there is no other reasonable way to interpret the claim. So she admits that she's reading a limitation from the specification, although she tries to defend that. The problem later in that paragraph, it becomes apparent still at A76 that the judge didn't understand what was actually going on in Claim 5 there. At the bottom of the page, she writes, because the device is acting as a bridge only, and note the word only there on A76, when the device recognizes data packets that conform to a second protocol suite, she concludes it follows that it is the recognition of the protocol suite that triggers the decision to act as a bridge. The claim does not suggest any other triggering event. We believe that that's completely wrong. The last element of Claim 5, if you look at that claim, it's under the circuitry, the control circuit. It does bridge packets in the first protocol suite if the address doesn't match. So the judge got that one completely wrong, and that's part of why we believe that that claim construction should be reversed. I will save the rest of my time for a moment. Thank you, Mr. Swenson. Ms. Duncan. Good morning, and may it please the Court, my name is Margaret Duncan, and I represent Extreme Networks, the plaintiff, appellee, and cross-appellant in this appeal. If acceptable to the Court, I would like to reserve two minutes for my rebuttal. Ms. Duncan, I'd like to ask you about the digest, why it isn't information rather than structure. The claim says a digest of information relating to the message. The specification talks about digest containing information in the bottom of Column 4. In Column 5, the digest is passed to the transmit processor. It certainly sounds like information. The transmit processor reads the digest before processing the related message and uses the information contained in the digest. It sounds like the digest is information. Why is that wrong? Your Honor, the patent, including the claim language itself, the specification, the file history, all talks about the digest in terms of an element that contains something else. And the claim has two elements. It has the digest element, and it has the… Well, this is a brief. This is a brief containing information. Do you call this a structure or a collection of information? I think that you could say the brief contains words, but the word, any particular word in the brief is not the brief. Which means you say this is a structure. It's the entity that holds the words or contains the words. But can a collection of information also contain specific, particular kinds of information? A collection can contain specific types of information. And that doesn't have to be a structure in order to do that. A collection of information is not necessarily a structure. I think in the inventions described in the 1A1 patent, Your Honor, the patent certainly, the specification, the claim itself, the file history, the intrinsic evidence, do speak to an entity, whether you want to call it a structure or a data structure, that contains something else. Well, I guess I'm having trouble finding that. I mean, the specification repeatedly refers to the digest as being read and written. And how can you read and read and write a structure? Well, it speaks to creating the digest and placing into the digest certain information. So if you look at the 1A1 Patent Claim 1, it talks about a digest of information relating to the message, the digest containing network protocol processing information. Then you look at the abstract. Which talks about reading the digest, right? And it also says each receiving processor collects into a digest information relating to network protocol processing of a particular message. The summary speaks to the same language, talking about the receiving line card to collect into a digest information relating to network protocol processing. And the file history, in response to the rejection by the examiner, Claims 1, 4 through 8 were all amended to clearly recite containing network protocol processing information. The examiner, that was in direct response to the examiner asking the patentee what the digest contained. But if you look at column 5, lines 23, 24, 25, it says the digest is stored in a reserved space of the buffer. Now, you store information, right? You don't store structures. Well, I think in terms of a computer invention, it would be a data structure, Your Honor. And the data structure can contain various information. Then you have the problem of the whole limitation becomes superfluous because it will have the same meaning as the network protocol processing information. Exactly, Your Honor. Don't we have somewhat of a rule that says we don't render limitations superfluous if there's another way to read them? Well, Your Honor, I think that what Judge Crabb was saying and what we respectfully submit is that in the context of the specification, the claim, the language in the file history, that there are two separate elements called for in Claim 1 of the 1A1 patent and that to say that the network protocol processing information has no meaning would be to render the second element superfluous. And we think that violates this Court's precedent in BICON. And that precedent is that claims are interpreted with an eye toward giving effect to all terms in the claim. And Terraces, in the Markman oral proceedings and in the briefing, conceded that the digest was not... Excuse me, Your Honor. I'm speaking to some of the judgment now. They expressly conceded that the digest limitation is not met by the extreme number of headers themselves. The headers, the parties had agreed, was part of a data packet. And to now say that the digest is the header of the message would be to say now you're conflating the digest term with the message term in the claim. So under Terraces' theory of infringement, its expert contended the AFH address filter header and the other elements in Xtreme's other products, the headers in the actual packets themselves were the digest, the information contained in those headers. If we disagree with you on the meaning of digest, we have to send the case back, right? No, Your Honor. I think there's another grounds for affirmance and that is that the AFH high-gig headers and intercept tags of Xtreme Network's data packets and the contents of those headers are all part of the message or data packet itself. And if this Court wants to affirm de novo a rule that there cannot be the claim digest separate from the message as called for in the claims of the 181, it's undisputed, the parties agreed, that a message or data packet is comprised of headers and a payload or the information contained in the packet. And the 181 claims the message and the digest as two distinct elements. And the 181 spec also describes the digest and the message as being stored in buffers and sent to transmit processors and consequently a header. Did the District Court decide whether the digest and the message were separate? Your Honor, she did not put that into her summary judgment ruling, so this is an additional grounds for affirmance by this Court. But I think that the claim language itself expressly calls for a separate message and a digest. What would it do if that's the route the Court went on? What would that do to your cross-appeal with regard to attorney's fees? That would sort of move that up, would it not? Your Honor, our cross-appeal for attorney fees relates to the issue of whether and terrorist has conducted a proper pre-filing investigation at the time it filed its counterclaims. And there we are saying that Judge Crabb would be... Didn't the Court say that they did what you did? No, Your Honor, not at all. I think that she was referring when she said that both parties had filed motions and things like that, that was speaking to our 1927 claim in the motion for fees, that we had filed a motion to amend our claims after we discovered new evidence outside of the deadline for amendment. And the other thing Judge Crabb was speaking to there was that we had asked for a dismissal with prejudice and an amnesty from suit on one of the patents they dropped earlier. But if we re-amend, you'll no longer be a prevailing point, period, right? That is true, Your Honor. On the jurisdictional issue, we respectfully submit that the Court does not have jurisdiction because a terrorist has filed its appeal two days after the 30-day deadline set in But the parties had raised the issue of supplemental damages and prejudgment interests before the District Court entered its first judgment. And if those issues mean to be resolved, why is this not proper? Why wasn't there a final judgment when they say it was? Your Honor, a final judgment is the disposition of everything that is before the Court at that time. And that's what I said. And as I understand it, the issue of supplemental damages and prejudgment interest was before the Court before she issued her first judgment. That's not correct, Your Honor. There was no pending motion. What had happened is the parties were discussing additional information that was needed and Judge Crabb entered a final order on November 5, 2008, and she retained jurisdiction for further motions. And so that would contemplate that if a motion was never filed, the November 5 judgment would have never been final. And that can't be the case. And if you look closely at the U.S. Supreme Court case in Osternick, the Court, in fact, found that a post-judgment motion for prejudgment interest was treated as a Rule 59 motion, and that told the date that an appeal would be due, 30 days from the disposition of that Rule 59 motion. And the Court did not look at the issue. The U.S. Supreme Court did not say that that post-judgment motion for prejudgment interest would make the previous judgment non-final. Your Honor, turning to the 727 patent. Let me ask a bit further on jurisdiction. Is that a proper ground for a cross-appeal? Your Honor, we had a fully briefed. You were the winning party. And if we agree that there's no jurisdiction, then there's still a winning party. So, while technically different from the merits, and jurisdiction is important, I'm thinking of your second argument. Why are you entitled to raise that issue as a cross-appeal when you end up with the same result? Your Honor, the Court had a fully briefed motion to dismiss for lack of jurisdiction before it, and on the day that we were participating in the mediation, the Court dismissed that motion. It was Extreme Network's fully briefed motion to dismiss, an opening response and a reply. And on the day of the mediation, the Court said that it would dismiss without prejudice and the parties could put that into their briefs. And that is exactly what we did, Your Honor, is we addressed the issue. But I'm not saying it was improper, but why is that a proper cross-appeal, entitling you to raise that in a second brief as appellee and have a second argument as appellee? Because, Your Honor, I guess it was an issue that we were going forward on that the Court had asked us to address in the briefs. But you end up in the same place, don't you, if you win on that issue? Yes, Your Honor. Can I go back to the point in your response where you said all the district court did in her initial judgment was to say you should file your motions? Maybe I'm wrong about the record. I understood that the motions that Extreme filed before her first judgment was issued raised the issues of supplemental damages and the date of the prejudgment interest, and that what she said in her order was she expressly retained jurisdiction to award supplemental damages, interests, or costs because those issues were before her. Am I wrong about that? No, Your Honor. There were no pending motions on those. We were waiting for information that we received after. But those issues had not been raised in motions that had already been filed? No motions had been filed, Your Honor. The motion was filed as a 60B after the final judgment when we had the information that we needed to address the supplemental damages. I think the only thing Judge Crabb recognized when we submitted proposed orders was that we had put in the proposed order a blank because we didn't know this information. So when she entered the final order, she retained jurisdiction thinking that there might be post-trial motions on those issues. And in Austernet, the Supreme Court said when that occurs, when prejudgment interest is in a post-judgment motion, it's treated as a Rule 59 motion, which does toll the date for an appeal. Ours was a non-tolling motion. It was outside of the 10-day period for a Rule 60 motion, so it would be a non-tolling Rule 60 motion. And that should not render the November 5th judgment non-final. Your Honor, turning to the 727 patent, we asked this Court to affirm Judge Crabb's decision that Extreme Networks does not infringe Claims 5, 6, and 7 of the 727 patent. The undisputed facts demonstrated that Extreme Networks accused network switches used the MAC address. If you're going to save that rebuttal time, you'd better do it now. Yes, Your Honor. I just wanted to finish with the undisputed evidence was that Extreme Networks switches used the MAC address of the data packet, not its protocol suite, in causing the device to act as a bridge. Thank you. Thank you. Mr. Swenson, you have a little over four minutes. Thank you, Your Honor. A couple of quick points to Ms. Duncan's comments. First of all, to Judge Proulx's question, it was in motions. It was in the injunction motion, which is at 819072, and as she admits, they actually submitted a proposed order with blanks for that, so it was pending. It wasn't in a motion, but the issue was out there. That is exactly the odds. It is also at 819102, where we put in our injunction pleading the numbers we had given them in June, five months before the November court or judgment. So that was out there.  It was framed up. It is exactly the odds. Was it a motion, or was that just your argument in a brief, in opposition to the motion for permanent injunction? It was about the addition of the… Was it a formal motion? No, not for damages. That wasn't a formal motion for damages. That's correct. It was just an argument you were making in response to their motion for permanent injunction, right? That is correct. However, that is even more than was done in pods, because in pods, it had simply been mentioned. But there was no motion to calculate prejudgment interest. We hereby move you, District Court, to not enter final judgment because we have an outstanding issue. That never happened, right? That did not happen. Let me point out, Your Honor, it's pretrial damages, not just interest. It is a component of the 284 damages. All of which depended upon you supplying supplemental sales data. Which they had in June. The problem I would see here is that you'd be opening a door to indefinitely postpone a final judgment. You can withhold a little information, which, until you give it up, we don't have a final judgment. Without even a motion. Is that a problem? Well, Your Honor, there are a number of rules for how a judgment becomes effective. But in this case, the point is they had those numbers. It's in the June letters and pleadings. It is a blank in their proposed order. So it's not that this was a mystery. It was framed up and the judge didn't put it in the October order that led to the November judgment. She put it in the March 16th order. And only under this court's precedent, Crown Safety Care, that is the only judgment that accounted for all the damages. That's what this court decided in POTS. A couple other quick points. In the attorney's fees motion, they did not actually separate their 1927 argument from their 285 argument, and that's part of the reason the judge dismissed the pre-filing investigation allegation, because in the Seventh Circuit, Section 1927 doesn't apply to pre-suit conduct. Also, at base, their cost appeal on attorney's fees is based entirely on these two discovery disputes, over interrogatory 17 and 18. And they never moved to compel on that. So they didn't even do what they could have done in the district court on that. They also tried to bootstrap Rule 11 into 285, which this court in Digio has said is at least unpersuasive. I'm not saying they can't try that, but this court has said it's unpersuasive. So they cite all the cases that they cite, Juden and so on, are Rule 11 cases that they're trying to import here, and the court has said not to do that. Meanwhile, two quick points on the standard. In the Apple case, this court has held that, where counsel offered to provide material for in-camera review, which we did twice, and has submitted declarations, which we submitted declarations from our expert, from our consultant, from our attorney, that it was not clear error not to find a case exceptional. And finally, on that point, in the Power Mosfet case, to Judge Rader's question, this court has held that, where the court declined to award attorney's fees in its discretion, in part on the litigation conduct of the movement, that even if it didn't, as in Power Mosfet, discuss the potential Rule 11 issue, which was also raised there, that it is not an abuse of discretion to deny fees based on the movement's litigation conduct. Thank you very much, Your Honor. Thank you, Mr. Swenson. Ms. Duncan, you have a minute left on the narrow issue of jurisdiction. Your Honor, on the jurisdictional issue, we respectfully submit that the federal rules should not be rewritten, that they should be strictly applied, as the U.S. Supreme Court has told us. And we also respectfully submit that Interis has filed its notice of appeal two days after the date it was due, and under the federal rules, the Supreme Court tells us that that divests the support of jurisdiction, and that that has to be... Does the rule that a case can be found exceptional in accounting have any relevance here? Your Honor, I think the cases say that if there were accounting issues before the court that were ongoing prior to the judgment, and the judgment centered in those that were finalized, but this was clearly information that was needed. The court couldn't have entertained our 60B motion outside of the 10-day period if it wasn't based on newly discovered evidence. Judge Crabb did entertain the 60B motion. She treated it as a post-trial Rule 60 motion, and it was a non-tolling motion. It did not set the clock running like the tolling motions did in this case. Okay. Thank you very much, Ms. Duncan. Thank you, Your Honor.